**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

|  |  |  |
|---|---|---|
| **AMY D. DUGAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:20-CV-00105-NCC** |
| | ) | |
| **KILOLO KIJAKAZI,**[1] | ) | |
| **Acting Commissioner of Social Security** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision

of the Commissioner denying the application of Amy D. Dugan ("Plaintiff") for Disability

Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*

Plaintiff has filed a brief in support of the Complaint (Doc. 19) and Defendant has filed a brief in

support of the Answer (Doc. 20).  The parties have consented to the jurisdiction of the

undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 9).

### I. PROCEDURAL HISTORY

Plaintiff filed her application for DIB on January 13, 2017 (Tr. 200-01).  Plaintiff was

initially denied on November 28, 2017, and she filed a Request for Hearing before an

Administrative Law Judge ("ALJ") (Tr. 132-36, 139-40).  After a hearing, by decision dated

June 7, 2019, the ALJ found Plaintiff not disabled (Tr. 18-35).  On April 22, 2020, the Appeals

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi shall be substituted for former Commissioner Andrew Saul as the defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Council denied Plaintiff's request for review (Tr. 1-5).  As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2022, and that Plaintiff has not engaged in substantial gainful activity since January 1, 2017, the alleged onset date (Tr. 23).  The ALJ found Plaintiff has the severe impairments of rheumatoid arthritis, fibromyalgia, mild neurocognitive impairment due to rheumatoid arthritis, status post left hip arthroplasty, and atrioventricular block, status post-pacemaker placement, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 23-34).  After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform sedentary work with the following limitations (Tr. 24).  Plaintiff cannot climb ladders, ropes, or scaffolds (*Id.*).  Plaintiff can occasionally climb ramps and stairs and she can engage in occasional balancing and stooping (*Id.*).  Plaintiff cannot engage in kneeling, crouching or crawling and can occasionally perform overhead reaching, pushing, or pulling bilaterally (*Id.*).  Plaintiff can frequently perform handling and fingering activities (*Id.*).  Plaintiff cannot work at unprotected heights, around moving mechanical parts or other such hazards (*Id.*).  Plaintiff is limited to performing simple routine tasks and can work at a consistent pace throughout the workday, but not at a production rate pace where each task must be completed within a strict time deadline (Tr. 24-25).  Plaintiff is limited to work that requires only occasional changes in the work setting (Tr. 25).  The ALJ found Plaintiff unable to perform any past relevant work but that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform including hand assembler, machine

tender, and table worker (Tr. 27-29).  Thus, the ALJ concluded that Plaintiff has not been under a

disability from January 1, 2017, through the date of the decision (Tr. 27).

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for

determining whether a person is disabled.  20 C.F.R. §§ 416.920, 404.1529.  "If a claimant fails

to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is

determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting

*Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).  In this sequential analysis, the

claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits.

20 C.F.R. §§ 416.920(b), 404.1520(b).  Second, the claimant must have a severe impairment.  20

C.F.R. §§ 416.920(c), 404.1520(c).  The Social Security Act defines "severe impairment" as

"any impairment or combination of impairments which significantly limits [claimant's] physical

or mental ability to do basic work activities. . . ." *Id.*  "'The sequential evaluation process may

be terminated at step two only when the claimant's impairment or combination of impairments

would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484

F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir.

2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or

equals one of the impairments listed in the Regulations.  20 C.F.R. §§ 416.920(d), 404.1520(d).

If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is

per se disabled without consideration of the claimant's age, education, or work history.  *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work.  20

C.F.R. §§ 416.920(f), 404.1520(f).  The burden rests with the claimant at this fourth step to

establish his or her RFC.  *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step

four of this analysis, the claimant has the burden of showing that she is disabled.").  The ALJ

will review a claimant's RFC and the physical and mental demands of the work the claimant has

done in the past.  20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work.  20

C.F.R. §§ 416.920(g), 404.1520(g).  At this fifth step of the sequential analysis, the

Commissioner has the burden of production to show evidence of other jobs in the national

economy that can be performed by a person with the claimant's RFC.  *Steed*, 524 F.3d at 874

n.3.  If the claimant meets these standards, the ALJ will find the claimant to be disabled.  "The

ultimate burden of persuasion to prove disability, however, remains with the claimant."  *Young v.*

*Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).  *See also Harris v. Barnhart*, 356 F.3d 926, 931

n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377

F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate

RFC remains on the claimant, even when the burden of production shifts to the Commissioner at

step five.").  Even if a court finds that there is a preponderance of the evidence against the ALJ's

decision, the decision must be affirmed if it is supported by substantial evidence.  *Clark v.*

*Heckler*, 733 F.2d 65, 68 (8th Cir. 1984).  "Substantial evidence is less than a preponderance but

is enough that a reasonable mind would find it adequate to support the Commissioner's

conclusion."  *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).  *See also Cox v.*

*Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record

de novo.  *Id.*  Instead, the district court must simply determine whether the quantity and quality

of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's

conclusion.  *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228

F.3d 860, 863 (8th Cir. 2000)).  Weighing the evidence is a function of the ALJ, who is the fact-

finder.  *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004).  Thus, an administrative

decision which is supported by substantial evidence is not subject to reversal merely because

substantial evidence may also support an opposite conclusion or because the reviewing court

would have decided differently.  *Krogmeier*, 294 F.3d at 1022.

## IV. DISCUSSION

In her appeal of the Commissioner's decision, Plaintiff asserts that the ALJ failed to

properly evaluate Plaintiff's RFC because the ALJ failed to properly account for Plaintiff's

limitations in sitting, handling and fingering, and concentration[2] (Doc. 19).  For the following

reasons, the Court finds that the ALJ's RFC determination is not supported by substantial

evidence.

RFC is the most a claimant can still do in a work setting despite that claimant's physical

or mental limitations.  *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (citation omitted); 20

C.F.R. § 404.1545(a)(1).  An ALJ determines a claimant's RFC "based on all the relevant

evidence, including medical records, observations of treating physicians and others, and

[claimant's] own description of her limitations."  *Page*, 484 F.3d at 1043 (quoting *Anderson v.

Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)).  Although the ALJ bears the primary responsibility

---

[2] Although Plaintiff alleges that the ALJ failed to properly account for her limitations in concentration, Plaintiff fails to provide any argument in support of her assertion. Regardless, given the Court's concerns regarding the ALJ's failure to develop the record as it relates to Plaintiff's physical impairments including her rheumatoid arthritis as well as the significant documentation of a cognitive impairment related to her rheumatoid arthritis, the Court will direct the Commissioner to also further develop the record as to this impairment. *See, e.g.,* Tr. 463 (noting a relationship between cognitive impairment and rheumatoid arthritis and Plaintiff's decline in intellectual functioning, retrieval-based memory loss for both verbal and visual material, and multiple indicators of executive dysfunction).

for assessing a claimant's residual functional capacity based on all relevant evidence, "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001) (quoting *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000)).  *See also Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001).  "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (quoting *Cox*, 495 F.3d at 619).  "An administrative law judge may not draw upon [his or her] own inferences from medical reports." *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000).

As previously indicated, the ALJ found Plaintiff has the RFC to perform sedentary work with the following limitations (Tr. 24).  Plaintiff cannot climb ladders, ropes, or scaffolds (*Id.*).  Plaintiff can occasionally climb ramps and stairs and she can engage in occasional balancing and stooping (*Id.*).  Plaintiff cannot engage in kneeling, crouching or crawling and can occasionally perform overhead reaching, pushing, or pulling bilaterally (*Id.*).  Plaintiff can frequently perform handling and fingering activities (*Id.*).  Plaintiff cannot work at unprotected heights, around moving mechanical parts or other such hazards (*Id.*).  Plaintiff is limited to performing simple routine tasks and can work at a consistent pace throughout the workday, but not at a production rate pace where each task must be completed within a strict time deadline (Tr. 24-25).  Plaintiff is limited to work that requires only occasional changes in the work setting (Tr. 25).

The Social Security regulations define "sedentary work" as work involving "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567.  Jobs are sedentary if walking and standing are required occasionally, and other

sedentary criteria are met.  "Occasionally" means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday.  Further, the ability to perform the full range of sedentary work requires the ability to sit "about 6 hours of an 8-hour workday."  Social Security Ruling ("SSR") 96-9P, 1996 WL 3741852, *3 (July 2, 1996).

Upon a full and complete review of the record, the Court finds that the ALJ failed to properly develop the record as it relates to Plaintiff's ability to sit and ability to handle and finger.  In support of her RFC determination, as it relates to these limitations, the ALJ largely relied on the opinion of Donna McCall, D.O. ("Dr. McCall"), a state agency medical consultant (Tr. 27).  On October 16, 2017, Dr. McCall completed a "Physical Residual Functional Capacity Assessment" in which she found, in relevant part that Plaintiff could stand and/or walk for a total of about six hours in an eight-hour workday and sit for a total of about six hours in an eight-hour workday (Tr. 124-25).  Dr. McCall did not include any limitations in handling or fingering (*See* Tr. 124-26).  In support of her opinions, Dr. McCall noted that Plaintiff had a left hip replacement in May 2017 but that on follow up on July 19, 2017 "she had excellent [range of motion], normal gait, 5/5 hip flexion and abduction.  It was determined PT was no longer needed and it was [discontinued]" (Tr. 126).  Dr. McCall further indicated that Plaintiff was seen by her primary care physician the following day at which time Plaintiff was prescribed Norco for pain relief after reporting moderate hip and bilateral leg pain with decreased mobility and a limiting gait (Tr. 126).  As it relates to her rheumatoid arthritis, Dr. McCall noted that Plaintiff has a diagnosis of RA and reported tenderness in both hands and her Methotrexate was increased to help with the tenderness and pain (*Id.*).  Dr. McCall indicated, but seemed to discount, Plaintiff's complaints that her medications make her sick for days at a time and very fatigued (*Id.*).  As

7

noted by Plaintiff, Dr. McCall does not cite to any evidence dated after July 18, 2017 (*See* Tr. 124-26).  Dr. McCall concluded that Plaintiff was limited to light work (Tr. 125).

The ALJ afforded the opinion "significant weight" finding it "consistent with the medical evidence of record" (Tr. 27).  The ALJ, however, included additional restrictions in her RFC determination, finding Plaintiff limited to sedentary, instead of light, work (Tr. 24).  As noted previously, sedentary work requires an additional limit on walking and standing of no more two hours in an eight-hour workday.  SSR 96-9P, 1996 WL 3741852, *3.  The ALJ also found Plaintiff more limited in her ability to handle and finger, finding Plaintiff able to only frequently handle and finger (Tr. 24).  The ALJ adopted in full Dr. McCall's opinion that Plaintiff can sit six hours in an eight-hour workday (*Id.*).

"The opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence."  *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (internal quotation marks omitted).  *See also Cox v. Barnhart*, 345 F.3d 606, 610 (8th Cir. 2003) ("[T]he results of a one-time medical evaluation do not constitute substantial evidence on which the ALJ can permissibly base his decision.").  "Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case."  *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004) (citations omitted).  In some cases, this duty requires the ALJ to obtain additional medical evidence, such as a consultative examination of the claimant, before rendering a decision.  20 C.F.R. § 404.1545(a)(3) ("before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary….").  "Failing to develop the record is reversible error when it does not contain enough evidence to determine the impact of a claimant's impairment on his ability to

work." *Byes v. Astrue*, 687 F.3d 913, 916 (8th Cir. 2012).  However, the "duty is not never-ending and an ALJ is not required to disprove every possible impairment."  *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011).  "Ultimately, the claimant bears the burden of proving disability and providing medical evidence as to the existence and severity of an impairment." *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013).  "Past this point, 'an ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision.'"  *Id.* (quoting *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994)).  "Reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial."  *Twyford v. Commissioner*, 929 F.3d 512, 517 n.3 (8th Cir. 2019) (citing *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995)).

The ALJ's reliance on Dr. McCall's opinion is misplaced as the outdated opinion is unsupported by the record as a whole.  Indeed, as noted by Plaintiff, the opinion is dated October 16, 2017, and did not include reference to any medical evidence dated after July 18, 2017 (Doc. 19 at 4).  In fact, Dr. McCall's opinion is the only opinion of record addressing Plaintiff's physical impairments and the ALJ fails to explain how or why she modified the RFC from that recommended by Dr. McCall.  Further, evidence post-dating Dr. McCall's opinion provides significant clinical findings such that an updated medical opinion is required.

On May 1, 2017, Plaintiff underwent a total left hip arthroplasty (Tr. 482).  Defendant asserts that the left-hip replacement effectively addressed her condition (Doc. 20 at 5).  Indeed, the record reflects that Plaintiff initially recovered well, reporting that she was "doing well" and "having no real issues" (Tr. 574).  *See also* Tr. 573 ("Amy has done extremely well.  She is able to squat down without difficulty.").  Plaintiff discontinued physical therapy in July 2017 because of her insurance visit limitations (Tr. 573, 594).  However, in an event post-dating Dr. McCall's

opinion, Plaintiff dislocated the left hip in November 2017 which required use of a brace (Tr. 771).  The dislocation caused continued pain and limitation in the hip (Tr. 755, 771, 1176, 12-5).  In December 2018, Plaintiff reported that it was "killing" her to bear weight on the left hip (Tr. 994).  She was told to seek treatment with Dr. Whiting for a second opinion of her hip pain (*Id.*).  Plaintiff was later diagnosed with sacroiliitis, an inflammation of her sacroiliac joint, on her left side (Tr. 1196).  Indeed, Plaintiff reported pain in the left hip throughout the period (*See* Tr. 1205 (February 2019 treatment note indicating that Plaintiff's primary complaint is left hip pain)).

Objective medical testing supports Plaintiff's subjective reports of pain.  For example, Dr. Charles Lawrie, MD, Assistant Professor of Orthopedic Surgery at Washington University, observed, of note: mild limp; tenderness at greater trochanter, buttock and SI joint; end of flexion limited by pain; positive FADIR;[3] and Patrick's test[4] cause groin pain on the left side (Tr. 1208-09).  Imaging indicated that the source of pain was not likely from loosening of the implant (*Id.*).  Dr. Lawrie referred Plaintiff for an aspiration of the joint which was negative for any acute fracture or malalignment (Tr. 1209, 1212).

During the relevant period, Plaintiff sought and received pain management treatment with pain management physician, Dr. Kenneth Moy, D.O. ("Dr. Moy") (Tr. 1195).  *See also* Tr. 360 (noting that Plaintiff sought treatment with Dr. Moy as early as May 2009 for another condition

---

[3] FADIR stands for flexion, adduction and internal rotation.  The FADIR test is a passive motion test to help diagnose hip impingement.  Geoffrey S. Kuhlman, M.D., *Hip Impingement: Identifying and Treating a Common Cause of Hip Pain*, Am. Fam. Physician (2009), *available at* https://www.aafp.org/afp/2009/1215/p1429.html.

[4] The Patrick's test, also known as the FABER test, is a flexion abduction and external rotation of the thigh and hip used to help diagnoses degenerative arthritis of the hip joint or trochanteric bursitis.  H. Gordon Deen, Jr., M.D., *Diagnosis and Management of Lumbar Disk Disease*, Concise Review for Primary-Care Physician (1996), *available at* https://www.mayoclinicproceedings.org/article/S0025-6196(11)63968-2/fulltext.

indicating a lengthy treatment relationship with Dr. Moy).  In February 2019, Dr. Moy diagnosed Plaintiff with rheumatoid arthritis, left-sided sciatica with notable tender area in left sacroiliac region; bilateral shoulder pain with notable tender areas with light palpation; myofascial pain; sacroiliitis status-post left hip arthroplasty and fluid aspiration with notable tender area in left SI region; piriformis syndrome of the left side; and greater trochanteric bursistis of the left hip (Tr. 1196).  Dr. Moy prescribed Plaintiff a muscle relaxant and scheduled her for a left SI steroid injection (*Id.*).  Plaintiff underwent the sacroiliac joint steroid and anesthetic injections to the left buttock on February 21, 2019 (Tr. 1198).  Dr. Moy, after physical examination, found Plaintiff to have the following moderate, bilateral shoulder pain and tenderness; moderate, bilateral elbow tenderness and pain; moderate, bilateral hand pain and tenderness; moderate, bilateral, posterior lumbar tenderness, pain, segmental pain with range of motion and axial weight loading, left greater than right L3-4, L4-5, L5-S1; moderate, bilateral sacral tenderness, pain, with mechanical compressive pain on examination; positive bilateral SI joint pain on light palpation and provocative testing; positive Faber test, bilateral; positive Gaenslen's test, bilateral; moderate, bilateral ankle tenderness and pain; moderate, bilateral foot tenderness and pain; and moderate, bilateral hip tenderness and pain (Tr. 1201).

As it relates to Plaintiff's ability to handle and finger, Plaintiff was diagnosed with rheumatoid arthritis in July 2015 and prescribed Methotrexate (Tr. 516, 533, 535).  Plaintiff testified that she has trouble opening jars and medicine bottles and occasionally drops things (Tr. 106).  Plaintiff also reported severe pain related to her rheumatoid arthritis.  *See, e.g.,* Tr. 753 ("Amy returns for a routine script of [N]orco for severe pain related to her RA/left hip join replacement[.]").  On physical examination, Dr. Kathryn Coulson, MD ("Dr. Coulson"), a rheumatologist, noted tenderness to bilateral wrists; tenderness to second through fourth

metatarsophalangeal joints (MTPs), bilateral; swelling and tenderness to right third proximal interphalangeal joint (PIP); and swelling and tenderness to left thumb (Tr. 539).  Plaintiff's rheumatoid arthritis also affects her ability to stand and walk as it causes "severe pain" in her ankles, feet, and toes (Tr. 767).  *See* Tr. 879 (diagnosis of rheumatoid arthritis without rheumatoid factor, both ankles and feet); Tr. 958 ("Still struggling with pain in her toes and ankles").  On this record, the Court cannot find that the ALJ's RFC determination as to Plaintiff's ability to sit or ability to handle and finger is supported by substantial evidence.  Thus, the Court will remand this action to afford the Commissioner the opportunity to further develop the record in these areas and seek appropriate medical opinion evidence addressing these abilities.  *See Nevland*, 204 F.3d at 858 (relying upon non-examining, non-treating physicians to form an opinion on a claimant's RFC does not satisfy the ALJ's duty to fully and fairly develop the record).

Having determined that remand is warranted on this point, the Court need not address Plaintiff's remaining arguments.  However, the Court also finds reversable error in the ALJ's failure to appropriately address Plaintiff's side effects to her medication.  It is well-established in the Eighth Circuit that, when assessing a claimant's credibility, the ALJ must consider, *inter alia*, the dosage, effectiveness, and side effects of medication.  *Medhaug v. Astrue*, 578 F.3d 805, 816 (8th Cir. 2009) (citing *Polaski v. Heckler*, 739 F.2d at 1320, 1322 (1984)).  "The ALJ is not required to discuss each *Polaski* factor as long as [she] acknowledges and considers the factors before discounting a claimant's subjective complaints."  *Grindley v. Kijakazi*, No. 20-1946, 2021 WL 3556102, at *4 (8th Cir. Aug. 12, 2021) (internal quotation marks omitted).

The Court finds that the ALJ failed to properly address the severe side effects Plaintiff experiences as a result of her medication.  Other than a brief mention that Plaintiff testified to her

side effects of fatigue, nausea and hair loss, the ALJ does not otherwise address them (Tr. 25). However, the record in this area is extensive.  As previously noted, Plaintiff was prescribed Methotrexate ("MTX") for her rheumatoid arthritis (Tr. 533, 535).  In December 2017, Plaintiff was taken off MTX in light of elevated liver enzymes (Tr. 537).  Dr. Coulson restarted Plaintiff on MTX after finding no success with other medical options (Tr. 539).  As of January 26, 2018, Plaintiff was taking eight tabs of MTX weekly which, she reported, make her feel sick and very fatigued for a couple of days afterwards (Tr. 755, 1173).  Indeed, the record is replete with Plaintiff's complaints of fatigue and nausea as a result of the MTX.  *See, e.g.,* Tr. 259, 265-66 (reporting fatigue and severe nausea, Plaintiff states, "My rheumatoid arthritis medication that I take makes me very sick for days at a time, very fatigued.")  Plaintiff's rheumatologist converted Plaintiff's therapy to injectable in the hopes that it would help with her side effects to no avail (Tr. 767).  *See* Tr. 104 (testifying that she takes the MTX injection once a week and that it causes nausea, fatigue, and hair loss).  Plaintiff reported diarrhea for 2-3 days after injection and additional fatigue (Tr. 958).  The record throughout indicates that the medication, at the dose Plaintiff requires for relief, causes her fatigue and diarrhea (Tr. 767, 958, 1175).  *See* Tr. 960 (Plaintiff's dosing was decreased to "see if there is improvement in diarrhea.").  Thus, given the extensive record addressing Plaintiff's sometimes severe side effects to her medication, it is reversable error for the ALJ not to have addressed Plaintiff's side effects.  *Santiago v. Saul*, No. 4:19 CV 01 CDP, 2020 WL 1083573, at *6 (E.D. Mo. Mar. 6, 2020) ("[T]he ALJ's conclusory statement that consideration of the factors shows Santiago's subjective allegations to be inconsistent with the record is insufficient to satisfy the mandate of *Polaski*."); *Noah v. Astrue*, No. 2:10CV56LMB, 2011 WL 4435086 at *9 (E.D. Mo. Sept. 23, 2011) (remanding the ALJ's decision, in part, because the ALJ did not explain how plaintiff's testimony regarding his

limitations and the side effects of his medications was inconsistent with the record). *See also cf. Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019) (finding plaintiff's complaints of debilitating physical side effects unsupported in light of her medical records and reported daily activities); *Depover v. Barnhart*, 349 F.3d 563, 566 (8th Cir. 2003) (no medical records during relevant time period mention the claimant having side effects from any medication).

## V. CONCLUSION

For the reasons set forth above, the Court finds the ALJ's decision was not based on substantial evidence in the record as a whole and should be reversed and remanded. On remand, the ALJ is directed to obtain medical opinion evidence addressing Plaintiff's limitation in sitting and limitation handling and fingering; further develop the medical record as it relates to these abilities; update the medical record on the whole; and then proceed through the sequential evaluation process, including a thorough review of Plaintiff's medication side effects, before issuing a new decision.

**IT IS HEREBY ORDERED** that this action is **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration in accordance with this Memorandum and Order.

A separate judgment will accompany this Memorandum and Order.

Dated this 23rd day of September, 2021.

＿＿＿/s/ Noelle C. Collins＿＿＿＿＿＿＿＿
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE